UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| THOMAS S. RICHEY, as Receiver,    ) | |
|     Plaintiff,                                     ) | |
|                                             ) | CIVIL ACTION FILE |
| v.                                                   ) | NO. 1:08-CV-1364 |
|                                             ) | |
| ZAHRA GHODS; *et al.*,                 ) | |
|     Defendants.                             ) | |

PLAINTIFF'S REPLY BRIEF IN SUPPORT OF HIS MOTION FOR
PARTIAL SUMMARY JUDGMENT AS TO DEFENDANT GULKANIAN

# INTRODUCTION

The Receiver's claims against Defendant Gulkanian are simple. He received funds from the Receivership Companies for supposedly arranging for the purchase of a $100 million CD that was never purchased and he is not entitled to keep the funds. Instead of presenting credible legal arguments or refuting the Receiver's evidence, Gulkanian claims that the Receiver's evidence is not admissible or relevant. The Receiver's evidence is both admissible and relevant and his Motion for Partial Summary Judgment as to Simon Gulkanian should be granted.

# STATEMENT OF FACTS

Gulkanian attempts to paint the Receiver's evidence with a broad brush. Gulkanian claims that the Receiver's evidence comes from only four sources: (1) the complaint in the current action, (2) pleadings and orders in cases not involving Gulkanian, (3) deposition testimony of Zahra Ghods in a related case, and (4) the affidavit of Michael Fuqua, the Receiver's accountant. This is simply untrue.

The Receiver does not rely on pleadings or deposition testimony in another action to prove any of Gulkanian's wrongful conduct. In fact, the Receiver relies almost exclusively on Gulkanian's own testimony, his correspondence, and other documentary evidence to establish Gulkanian's wrongdoing. The Receiver rounds out support for his factual statements through the affidavit testimony of Michael

Fuqua, the Receiver's accountant.  Together, that evidence comprises the support for the vast majority of the statements in Plaintiff's Statement of Undisputed Material Facts in Support of his Motion for Partial Summary Judgment as to Gulkanian ("Plaintiff's Facts") (ECF #103-3).

Any orders cited are those from related cases issued by this Court and together with pleadings are relied upon in only the following ways, not directly relating to Gulkanian:

1.  The Complaint in the case of *SEC v. Gish*, the first case filed relating to the underlying Ponzi scheme at issue here, by itself, is cited to establish four background facts:  (1) that the SEC filed a complaint against Gish to stop a Ponzi scheme; (2) that Gish operated the companies that were operating the Ponzi scheme; (3) that the SEC sought injunctive relief and the appointment of a receiver, and (4) that the Ponzi scheme worked, as all do, by using new investor funds to pay back earlier investors. (Plaintiff's Facts at ¶¶ 1-3, 10).

The fact that a complaint was filed and that it sought injunctive relief and appointment of a receiver are simply facts of litigation procedure that may be proven by the pleadings themselves – all of which were filed in this Court and assigned to your Honor.  U.S. v. Martino, 648 F.2d 367, 389 (5th Cir. 1981).  The allegations that the Receivership Companies were operated as a Ponzi scheme have

been judged as fact by this Court: "The Court agrees with Plaintiff's position that the evidence establishes that the Receivership Companies made transfers to Defendants with actual intent to defraud the creditors of the Receivership Companies. The Receivership Companies were operated as a Ponzi scheme." Order of September 16, 2009 in <u>Thomas S. Richey, as Receiver, etc. v. Barry Beers, et al.</u>, Civ. Action File No. 1:07-cv-02736-CC, U.S. District Court for the Northern District of Georgia, at 6. (<u>See</u> Exhibit A). That ruling was made on the very same evidence that is once again before the Court in this case.

    2.    The *SEC v. Gish* complaint is also cited – along with this Court's Order granting the SEC's motion for summary judgment – to set the background that (1) Gish sold unregistered securities, (2) Gish claimed that his investments were high-yield trading programs that generated lucrative profits by purchasing debt instruments from major international banks at a discount and quickly reselling them at face value, (3) the investments were "prime bank instrument schemes," (4) the investments were supposed to be in blocked accounts, but were not, and (5) the Receivership Companies did not receive any appreciable returns of interest or principal on any of the supposed investments. (Plaintiff's Facts ¶¶ 6-9). The order made findings of fact and conclusions of law regarding these investments.

    Priebe argues that your Honor's own orders should be disregarded because

Plaintiff did not attach certified copies to his electronic filing. Scanned copies of the certified copies of those pleadings are attached hereto and the originals will be provided upon the Court's request. (Exhibits A-F, attached hereto).

3.The Receiver cites to the present action and the *SEC v. Ghods* action to establish the procedural background and the disposition of the case as to other named defendants and findings of facts and conclusions of law made with regard to the underlying investments at issue here. (Plaintiff's Facts ¶¶ 17, 19-20, 29, 115-122). These facts are not used to establish Gulkanian's conduct.

4.The Receiver also cites to the present action to establish the background of Zahra Ghods' conduct. (Plaintiff's Facts ¶¶ 18, 22-28, 30-33, 36-39, 73-74, 86). Ghods defaulted in the present action and she is deemed to have admitted all allegations in the Receiver's Complaint. A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact. Nishimatsu Constr. Co., Ltd., v. Houston Nat'l Bank, 515 F. 2d. 1200, 1206 (5th Cir. 1975); see also Buchanan v. Bowman, 820 F. 2d 359, 361 (11th Cir. 1987); Huddleston v. Smith, 2010 WL 1410556 *1 (N.D. Ga. March 30, 2010); Feliciano v. Wehunt, 2010 WL 1565493, *1 (N.D. Ga. April 19, 2010). The Receiver does not use Ghods' admissions by her default to establish Gulkanian's conduct or admissions.

5.The Receiver cites to Gulkanian's own answer in the present action in

one instance (Plaintiff's Facts ¶ 29), which includes his admissions and may be cited as evidence. <u>Weekes v. Nationwide General Ins. Co.</u>, 232 Ga. App. 144, 148, 500 S.E.2d 620, 624 (1998) ("[defendant's] answer is an admission in judicio that can be used against it").

      6.    Finally, the Receiver cites to Ghods' deposition in the *SEC v. Gish* action as additional support for the factual allegations that Ghods knew the investors were relying on representations regarding the $100 million CD from CIBC when they invested. (Plaintiff's Facts ¶ 33). The Receiver also cites to Ghods' deposition to show Ghods' statements as to her own conduct. (Plaintiff's Facts ¶¶ 46, 53, 77-80, 82-83). Finally, the Receiver cites to Ghods' deposition as additional evidence that she authored certain communications, which are themselves offered as evidence. (Plaintiff's Facts ¶ 75). None of these citations to Ghods' deposition are relied on to prove the Receiver's claims against Gulkanian. Rather, they all are provided as background.

      Notably, Gulkanian does not contend that any of these facts is inaccurate.

ARGUMENT AND CITATION TO AUTHORITY

A.    <u>Michael Fuqua's Affidavit is admissible and proper</u>.
    Gulkanian argues falsely that the affidavit of Michael Fuqua ("Fuqua Affidavit") (ECF #103-7), the Receiver's accountant, does not meet the requirements of Fed. R. Civ. P. 56. As an initial matter, Gulkanian's attack of the

Fuqua Affidavit is procedurally improper.  To properly attack an affidavit supporting a motion, the attacker should filed a motion to strike.  See, e.g., Tishcon Corp. v. Soundview Communications, Inc., 2005 WL 6038743 (N.D. Ga. Feb. 15, 2005) and In re Real Estate West Ventures, L.P., 170 B.R. 736 (N.D. Ga. 1993).[1]  Further, Gulkanian's objections are not proper because they are not specific.  See, e.g., CSX Transp., Inc. v. McCord, 202 Ga. App. 365, 370, 414 S.E.2d 508, 509-510 (1991).

The Fuqua Affidavit is proper nonetheless.  Gulkanian claims that the Fuqua Affidavit is not made on personal knowledge and does not set out admissible facts as required under Fed. R. Civ. P. 56(e)(1).  The Fuqua Affidavit does both.

Every statement set forth in the Fuqua Affidavit is based on personal knowledge, as set forth in the affidavit itself:  "My testimony is based on my personal knowledge.  … The facts set forth in this declaration are known to me personally…."  (Id. at ¶¶ 4 and 10).  "Facts" include reference to documents.

The evidence presented in the Fuqua Affidavit is admissible.  Fuqua presented the voluminous bank account records in the form of a summary, which is allowed under Fed. R. Evid. 1006 so long as copies are made available to the other

---

[1] In his Response to Plaintiff's Statement of Facts, Gulkanian states that he "anticipates" filing a motion to strike the Fuqua Affidavit, but did not do so simultaneously with his Response and has not done so in the 20 days since.

parties and they are produced if so ordered by the Court:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court.

Copies of all bank account records summarized in the Fuqua Affidavit were produced to Gulkanian through discovery in the present action. The Receiver is prepared to produce the account records if the Court so orders.

The account records that are summarized are set forth in the Fuqua Affidavit. (Id. at ¶ 12). Fuqua testifies that those account records are those of the Receivership Companies. (Id. at ¶ 11). As the Receiver's accountant, Fuqua is competent to testify regarding its business records. In re Real Estate West Ventures, L.P., 170 B.R. 736, 739 (N.D. Ga. 1993) (trustee could give affidavit based on review of financial records without first hand knowledge of such records); Radio Parts Co. v. Lowry, 125 B.R. 932, 944 (D. Md. 1991) (manager lacking first hand knowledge of records could review them and provide admissible summary of same). Nevertheless, attached hereto is the Amended Affidavit of Michael Fuqua, which includes the bank custodian of records certifications for all of the account records summarized in the original Fuqua Affidavit stating that

those documents are what they purport to be. (Exhibit G).[2]

B.  Count I: Fraudulent Transfer.
   1.  *Receiver's Fraudulent transfer claim is not time barred.*  Gulkanian argues that the Receiver's claim for fraudulent transfer under O.C.G.A. § 18-2-75 is time barred because it was not brought within one year of the transfers. Gulkanian's argument is misplaced because the Receiver has not made a claim under O.C.G.A. § 18-2-75.  The Receiver's fraudulent transfer claims are all brought under O.C.G.A. § 18-2-74(a), which are governed by a four year statute of limitations.  O.C.G.A. § 18-2-79.

   2.  *Intent of the recipient is not required to prove fraudulent transfer.* The Receiver's claim for fraudulent transfer is simple.  Gulkanian received $886,000 directly and indirectly through transfers to third parties at his direction. (Fuqua Affidavit ¶¶ 32-35 ).  Those funds originated from the Receivership Companies.  (Id. at ¶ 37).  The Receivership Companies were operated as a Ponzi scheme.  (Exhibit A at p. 6; Fuqua Affidavit at ¶ 15).  Thus, as a matter of law, the transfers of funds were fraudulent and Gulkanian is required to return them.

   The Receiver presents three independent claims for fraudulent transfer, none

---

[2] The Receiver has filed a motion for consideration of this affidavit simultaneously herewith.  "The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or <u>additional affidavits</u>."  Fed. R. Civ. P. 56(e)(1) (emphasis supplied).

of which require proof of an ill intent on the part of the <u>recipient</u> of the transfers:

(1) A transfer is fraudulent if the <u>debtor</u> made the transfer "with actual intent to hinder, delay, or defraud any creditor of the debtor;"[3] or

(2) A transfer is fraudulent if the debtor made the transfer "without receiving a reasonably equivalent value in exchange for the transfer…, and the debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;"[4] or

(3) A transfer is fraudulent if the debtor made the transfer "without receiving a reasonably equivalent value in exchange for the transfer…, and the debtor intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due."[5]

(1) <u>Transfers made with intent to hinder, delay, or defraud</u>.  As set forth in detail in the Receiver's opening brief, the first type of fraudulent transfer claim is present here because the Receivership Companies were operated as a Ponzi scheme and as such any transfers made from the debtor – the Receivership Companies – were made with actual intent to defraud, as a matter of law.  <u>In re C.F. Foods, L.P.</u>,

---

[3] O.C.G.A. § 18-2-74(a)(1).
[4] O.C.G.A. § 18-2-74(a)(2)(A).
[5] O.C.G.A. § 18-2-74(a)(2)(B).

280 B.R. 103, 110 n.15 (Bankr. E.D. Pa. 2002) ("One can infer an intent to defraud [investors] from the mere fact that a debtor was running a Ponzi scheme. Indeed, no other reasonable inference is possible."); Quilling v. Schonsky, 247 Fed. Appx. 583, 586 (5th Cir. 2007) ("Knowledge that future investors will not be paid is sufficient to establish actual intent to defraud them."); In re Slatkin, 525 F.3d 805, 814 (9th Cir. May 6, 2008) ("mere existence of a Ponzi scheme sufficient to establish actual intent to hinder, delay, or defraud creditors" under UFTA).

This Court – while considering the very same evidence that is before the Court in this case – has decided that the Receivership Companies "were operated as a Ponzi scheme" and made transfers with "actual intent to defraud the creditors of the Receivership Companies." (Exhibit A, p. 6). Thus, Gulkanian's argument that the Receiver is misrepresenting the fraudulent transfer statues and the effect of a Ponzi scheme is off base.

Gulkanian argues that the federal cases cited above are inapplicable. As previously argued, Georgia follows the Uniform Fraudulent Transfer Act, which is also the law in the states of the courts cited; thus, those cases are directly on point.[6]

Gulkanian argues that Georgia is different because its fraudulent transfer statute lists a number of factors to determine whether intent exists under O.C.G.A.

---

[6] TEX. BUS. & COM. CODE ANN. § 24.005; 12 PA. CONS. STAT. ANN. § 5104.

§ 18-2-74(a)(1).  As an initial matter, the Georgia statute is not unique in this regard.  Those same factors are listed in the Texas and Pennsylvania fraudulent transfer statutes.  TEX. BUS. & COM. CODE ANN. § 24.005(b); 12 PA. CONS. STAT. ANN. § 5104(b).  Moreover, Gulkanian misreads whose intent is relevant.  It is the intent of the debtor, the transferor (the Receivership Companies) that is at issue and that should be considered using the factors listed in the statute:  a transfer is fraudulent "if the <u>debtor</u> made the transfer or incurred the obligation <u>with actual intent</u> to hinder, delay, or defraud…." O.C.G.A. § 18-2-74(a)(1) (emphasis supplied).  Gulkanian's intent, as the transferee, is irrelevant.[7]

(2) and (3) <u>Transfers made without exchange of reasonably equivalent value and transferee lacks ability to pay debts</u>.  As set forth in the Receiver's opening brief, the second and third types of fraudulent transfer claims are also present here because the transfers to Ghods and Gulkanian were not in exchange for reasonably equivalent value and because the Receivership Companies were operated as a

---

[7] In a footnote, Gulkanian also argues that the court in <u>Quilling</u> did not actually decide that a transferee's intent is irrelevant.  Gulkanian is wrong.  While the court in <u>Quilling</u> did acknowledge it was making an "Erie guess" with regard to construction of the statute's meaning because there were no Texas Supreme Court cases on the subject, the court went on to state that it agreed with a previous circuit court opinion that "the statute's plain meaning is the best guide to the Texas Supreme Court's likely view" and concluded that the transferee's knowledge is irrelevant:  "We conclude that the transferee's knowledge is irrelevant to deciding whether transfers were made with an intent to defraud."  247 Fed. Appx. at 586.

Ponzi scheme. As a Ponzi scheme, the Receivership Companies were insolvent from inception, thus they could not pay their debts.

Without any citation to authority, Gulkanian also argues that it is not proper to assume that the Receivership Companies were "insolvent from inception." Gulkanian fundamentally misunderstands the realities of a Ponzi scheme. The Receivership Companies had money in their bank accounts at the time the transfers were made, true. But that does not mean that the Receivership Companies were solvent. Solvency means that a company has the ability to pay its debts as they become due. By definition a Ponzi scheme is insolvent from inception because it can never pay its debts as they become due. Stenger v. World Harvest Church, 2006 WL 870310, *10 (N.D. Ga. Mar. 31, 2006).

C.    Count II:  Conversion.

Gulkanian argues that the Receiver's conversion claim cannot stand because there is alleged insufficient evidence to trace the funds from the Receivership Companies to Gulkanian. Gulkanian attacks the alleged sources of the evidence tracing the funds, claiming that Ghods' deposition testimony and the Fuqua Affidavit are inadmissible. The Ghods deposition testimony is not the source of evidence for tracing the funds. The Fuqua Affidavit provides the evidence for tracing the funds and is admissible as set forth above.

Gulkanian also argues that because all of the bank account records are not

attached to the Fuqua Affidavit there is insufficient evidence to trace the funds.  As set forth above, Fuqua presented the voluminous bank account records in the form of a summary, which is allowed under Fed. R. Evid. 1006.  The Fuqua Affidavit sets out in detail the original source of the funds at issue here and their path to Gulkanian and those to whom he directed funds.  This detailed funds tracing is sufficient to allow a claim for conversion of money.

Gulkanian cites to Taylor v. Powertel, Inc., 250 Ga. App. 356, 551 S.E.2d 765 (2001), as support for his argument that the Receiver has not adequately shown that Gulkanian converted the specific funds complained of here.  Taylor is inapposite.  There, the court found no conversion because the funds sought were a portion of fees paid for phone service.  Id. at 359.  Some of the funds were properly paid, but others were not and the plaintiff did not properly delineate which funds were the converted funds.  Id.  Here, all funds paid to Gulkanian and those paid at his direction were converted funds for which Gulkanian is liable.  The other problem with the plaintiff's conversion claim in Taylor was that the defendant had offered repayment to plaintiff, which was refused.  Id. at 357-358.  Here, demand was made, but no payment ever offered or paid.  (Exhibit 25 to Plaintiff's Facts; Fuqua Affidavit ¶ 47).

D. Count VIII:  Unjust Enrichment.
Gulkanian argues that the Receiver's claim for unjust enrichment is

improper because Ghods did not have the expectation that Gulkanian would return the funds to her when they were transferred, citing <u>Stenger v. World Harvest Church, Inc.</u>, 2006 WL 870310 (N.D. Ga. Mar. 31, 2006).  This case is not analogous to the situation here.  Gulkanian cannot credibly compare himself to a church receiving tithes, as was the case in <u>Stenger</u>.  In <u>Stenger</u>, one of the Ponzi scheme participants gifted a substantial sum to a church and the Court found that because the gift giver did not have an expectation that the church would provide services or otherwise return the money, then there was no unjust enrichment.  Notably, the Court did not hold that the church was entitled to keep the money, but held that instead, the money was recoverable from the church under the theory of fraudulent transfer.  2006 WL 870310, *3.

Here, Ghods transferred money to Gulkanian and to third parties at his direction in exchange for the $100 million CD at CIBC.  (Gulkanian Deposition ("Gulkanian Depo.") (ECF #103-16) at pp. 23, 40-41, 117-118; Exhibits 16-18 to Plaintiff's Facts (e-mail and letter communications)).  Unlike the church in <u>Stenger</u>, Gulkanian was expected to provide something in exchange for the funds, which he never did.  (Fuqua Affidavit ¶ 48).  Thus, he was unjustly enriched.

E.  <u>Count IX:  Money Had and Received</u>.

The Receiver is seeking $886,000 on his money had and received claim, not $685,000 as stated by Gulkanian.  Gulkanian argues that the claim should fail

because allegedly the Receiver cannot adequately trace a certain $350,000 check. Gulkanian admitted that Ghods, who received over $10 million from the Receivership, gave him at least $886,000.  (Gulkanian Depo. at pp. 73-74).

The Receiver has provided sufficient evidence to prove his money had and received claim:  Gulkanian received $886,000 from the Receivership Companies, which were operated as a Ponzi scheme, Gulkanian did not provide any value to the Receivership Companies in exchange for the money, the Receivership Companies made a demand for the return of the funds, and Gulkanian ignored the demand.  Taylor v. Powertel, Inc., 250 Ga. App. 356, 359, 551 S.E.2d 765, 770 (2001) ("The elements of [money had and received] are:  a person has received money of the other that in equity and good conscious he should not be permitted to keep; demand for repayment has been made; and the demand was refused.").

## CONCLUSION

Gulkanian does not dispute the substance of the Fuqua Affidavit: he does not deny receiving at least $886,000 that rightfully belongs to the Receivership Companies.  The Fuqua Affidavit is admissible and provides sufficient evidence that the Receivership Companies were operated as a Ponzi scheme and that Gulkanian received at least $886,000 in funds that originated from the Receivership Companies.  Thus, he is liable to the Receivership Companies.

Respectfully submitted this 17th day of August 2010.

/s/ Stacey Godfrey Evans
Jennifer D. Odom
Georgia Bar No. 549717
jennifer.odom@bryancave.com
Stacey Godfrey Evans
Georgia Bar No. 298555
stacey.evans@bryancave.com
Ann W. Ferebee
Georgia Bar No. 431941
ann.ferebee@bryancave.com

BRYAN CAVE LLP
One Atlantic Center – Fourteenth Floor
1201 West Peachtree Street
Atlanta, Georgia 30309
(404) 572-6600
Fax:  (404) 572-6999

Attorneys for Thomas S. Richey,
Receiver for Weston Rutledge
Financial Services, Inc.;
Zamindari Capital, LLC;
Lexington International Fund, LLC,
a/k/a Lexington International Fund, Inc.;
and Oxford Adams Capital, LLC
6087147

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| THOMAS S. RICHEY, as Receiver, )<br>    Plaintiff, )<br>) <br>v. )<br>)<br>ZAHRA GHODS; *et al.*, )<br>    Defendants. ) | CIVIL ACTION FILE<br>NO. 1:08-CV-1364 |

## LOCAL RULE 7.1D CERTIFICATION

I hereby certify that this brief has been prepared with a font and point selection approved in Local Rule 5.1B, namely, Times New Roman font size 14.

This <u>17th</u> day of August 2010.

                                                       /s/ Stacey Godfrey Evans
                                                       Stacey Godfrey Evans

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| THOMAS S. RICHEY, as Receiver, )<br>    Plaintiff, )<br> )<br>v. )<br> )<br>ZAHRA GHODS; *et al*., )<br>    Defendants. ) | CIVIL ACTION FILE<br>NO. 1:08-CV-1364 |

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing PLAINTIFF'S REPLY BRIEF IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANT GULKANIAN with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record and a copy has been sent to the answering *pro se* defendants by depositing a copy of same in the United States mail with adequate postage affixed thereto as follows:

>   Purya Ghrabeti
>   7 Via Gardenia
>   Rancho Santa Margarita, CA 92688-1430

   This 17th day of August 2010.

>                               /s/ Stacey Godfrey Evans
>                               Stacey Godfrey Evans